UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION



03 OCT 23 AM 10: 11

U.S. DISTRICT COURT
N.D. OF ALABAMA

MICHAEL B. PRICE,                    ]
                                     ]
        Plaintiff,                   ]
                                     ]
vs.                                  ]        CV-03-CO-01790-W
                                     ]
UNIVERSITY OF ALABAMA; THE BOARD     ]
OF TRUSTEES OF THE UNIVERSITY OF     ]
ALABAMA; and ROBERT E. WITT,         ]
                                     ]        **ENTERED**
        Defendants.                  ]        OCT 2 3 2003

MEMORANDUM OF OPINION

I.    INTRODUCTION.

    Presently before the court is a motion to dismiss, filed by the

defendants on August 4, 2003.  [Doc. # 6].  The issues raised in the motion

have been fully briefed by the parties, and are now ripe for decision.  Upon

consideration, the court is of the opinion that the motion to dismiss is due

to be granted.



II.    FACTS[1].

Plaintiff Michael Price ("Price") was hired as the head football coach for the University of Alabama ("University") in January 2003. [Doc. # 1, Compl. ¶ 6].  In April 2003, reports were made of alleged inappropriate behavior by Price at a charitable golf event in Pensacola, Florida. [Doc. # 1, Compl. ¶ 7].  The event was not official University business.  [Doc. # 1, Compl. ¶ 7].  At some point after the event, Price "openly and honestly" informed the University's Athletic Director and President, Robert E. Witt ("Witt"), of what had transpired during this trip.  [Doc. # 1, Compl. ¶ 7].

A meeting of the Board of Trustees of the University of Alabama ("Board") was scheduled for May 3, 2003, to address the allegations against Price.  [Doc. # 1, Compl. ¶ 7].  The meeting began as an open forum where players and supporters were allowed a brief time to address the meeting. [Doc. # 1, Compl. ¶ 7].  Thereafter, the Board went into a closed session. [Doc. # 1, Compl. ¶ 7].  Following the closed session, Witt made a public announcement that Price had been terminated as head football coach

---

[1]The facts in this opinion are taken as alleged in the complaint, the amended complaint and the exhibits to the complaint.

because of conduct inconsistent with the policies of the University.  [Doc. # 1, Compl. ¶ 7].

Price sought to appeal his termination to the Staff Mediation Council on the grounds that he was not given proper notice of the University policies that he was alleged to have violated and that he was not given the opportunity to refute the allegations against him.  [Doc. # 1, Compl. ¶ 8]. Witt joined in Price's request that the Staff Mediation Council hear the appeal.  [Doc. # 1, Compl. Ex. 5].  On July 1, 2003, Price's request was denied by majority vote of the Staff Mediation Council.  [Doc. # 1, Ex. 13]. Price filed the instant action on July 14, 2003, against the University, its Board, and Witt.  [Doc. # 1, Compl. ¶¶ 10-31].   The complaint includes claims alleging: (1) a violation of the Fifth and Fourteenth Amendments of the Constitution of the United States for improper notice and failure to give a hearing, thus depriving Price of a liberty and property interest;[2] (2) breach of contract; (3) wrongful termination; and (4) fraud, misrepresentation, and

_____

[2]The claim in Count I is asserted under 42 U.S.C. § 1983.

deceit. [*Id.*][3]

Price amended his complaint on July 28, 2003, to state a claim for declaratory judgement. [Doc. # 5, Am. Compl.].  Specifically, Price alleges that before his termination, Witt represented to him that he would be given the right and opportunity to present his evidence at a hearing.   Further, Price alleges Witt stated that he "was a good man in a bad situation and this [would] be worked out." [Doc. # 5, Am. Compl. ¶ 3].  Price requests that this court enter a judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, declaring that the defendants have breached the contract made the basis of this suit and owe Price compensation for his termination, and declaring that defendants must provide him with a post-termination hearing and appeal of his termination. [Doc. # 5, Am. Compl. ¶ 6].

The defendants filed the instant motion to dismiss on August 4, 2003. [Doc. # 6].  Defendants moved to dismiss the complaint and first amended complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of

---

[3]Counts II through IV are state law claims that are asserted under this court's supplemental jurisdiction.

jurisdiction over the subject matter and Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

On the 23rd day of September 2003, after a hearing on the motion and with the consent of the parties, this court dismissed all the claims then pending against the University as well as the Board.  In addition, this court dismissed Count II of the complaint against all parties and dismissed Count III and IV of the complaint against Witt in his official capacity.  As of this date, Count I and the amended complaint remain pending against Witt in his official capacity and all counts except Count II, as well as the amended complaint remain pending against Witt in his individual capacity.

III.   STANDARD.

A.     Rule 12(b)(1).

The defendant, Witt, has moved to dismiss certain of Price's claims for lack of subject matter jurisdiction.   "[W]hen a defendant properly challenges subject matter jurisdiction under Rule 12(b)(1) the district court is free to independently weigh facts . . . and satisfy itself as to the existence of its power to hear the case."  *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003).  The court may consider matters outside the

pleadings in ruling on a motion under Rule 12(b)(1). *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991). However, the Eleventh Circuit has cautioned that if the facts necessary to sustain jurisdiction implicate the merits of the plaintiff's cause of action, the court should "find that jurisdiction exists and deal with the [jurisdictional] objection as a direct attack on the merits of the plaintiff's case." *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997). The burden of proof on a Rule 12(b)(1) motion is on the party averring jurisdiction. *Thomas v. Gaskill*, 315 U.S. 442, 446 (1942).

B.    Rule 12(b)(6).

Witt has also challenged the sufficiency of the complaint and amended complaint under Rule 12(b)(6), which provides for dismissal of a complaint for failure to state a claim upon which relief may be granted. A court may dismiss a complaint under Rule 12(b)(6) only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

In deciding a Rule 12(b)(6) motion, the court must " . . . accept all well-pleaded factual allegations in the complaint as true and construe the

facts in a light most favorable to the non-moving party." *Dacosta v. Nwachukwa*, 304 F.3d 1045, 1047 (11th Cir. 2002), *citing GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir. 1998). "[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (quoting *Marsh v. Butler County*, 268 F.3d 1014, 1036 n. 16 (11th Cir. 2001)).  Furthermore, "[a] complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* possible theory." *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (emphasis in original)(citing *Robertson v. Johnston*, 376 F.2d 43 (5th Cir. 1967)).

IV.   DISCUSSION.

    A.   Price's claims against Witt in his official capacity and the application of the Eleventh Amendment.

        1.   Price's Section 1983 claims for monetary relief against Witt, in his official capacity.

Witt alleges that the remaining counts against him in his official capacity are barred by the Eleventh Amendment and, as such, this court has

no jurisdiction to hear this case.  The Eleventh Amendment provides, "The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  Although the language of the Eleventh Amendment applies only to actions brought against a state by citizens of another state, the United States Supreme Court has extended the Eleventh Amendment's applicability to suits against a state by its own citizens.  *Bd. of Trs. of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001)(citing *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 72-73 (2000); *College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 669-70 (1999); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996);  *Hans v. Louisiana*, 134 U.S. 1, 15 (1890).

The Eleventh Amendment protects not only the states from suit by private individuals but also state agencies and instrumentalities, and state officials.  *Harden v. Adams*, 760 F.2d 1158, 1163 (11th Cir. 1985). The Supreme Court held in *Edelman v. Jordan* that "a suit by private parties

seeking to impose liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."  415 U.S. 651, 663 (1974).

The question of whether an Alabama university is an agency or instrumentality of the state and thus immune from suit has been answered in the affirmative on a number of occasions.  *See Massler v. Troy State Univ.*, 343 So. 2d 1 (Ala. 1977); *Ellison v. Abbott*, 337 So. 2d 756 (Ala. 1976); *Rigby v. Auburn Univ.*, 448 So. 2d 345 (Ala. 1984); *Harden v. Adams*, 760 F.2d 1158, 1163 (11th Cir. 1985).  In addition, " . . . a suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office.  . . .  As such, it is no different from a suit against the state itself." *Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 71 (1988)(citations omitted).

The court finds that Witt, in his official capacity as President of the University, is immune from suit under the Eleventh Amendment.  Therefore, Mr. Price's claims against Witt in his official capacity for monetary damages under 42 U.S.C. § 1983 are due to be dismissed.

> 2.    Price's petition for declaratory relief against
>        Witt in his official capacity.

Price argues that this court should not dismiss his prayer for declaratory relief against Witt in his official capacity. Specifically, Price asks this court to declare that the defendants breached the contract made the basis of this suit and owe him compensation, and that Witt in his official capacity must provide him with a post-termination hearing and appeal.

The Supreme Court, in *Alabama v. Pugh*, 438 U.S. 781 (1978), found that a mandatory injunction against the State of Alabama and the Alabama Board of Corrections was unconstitutional, saying that "[t]here can be no doubt . . . that suit against the State and its Board of Corrections is barred by the Eleventh Amendment unless Alabama has consented to the filing of such a suit." *Id.* at 782.

In *Higganbotham v. Oklahoma ex rel. Okla. Transp. Comm'n,* 328 F.3d 638, 639 (10th Cir. 2003), the Tenth Circuit found that the Eleventh Amendment barred suit against the State of Oklahoma and its agencies for injunctive and declaratory relief, saying "[t]here is no doubt that the Eleventh Amendment applies. Plaintiff's action is not saved by the fact that he seeks only declaratory and injunctive relief against the state defendants.

The Eleventh Amendment expressly applies to suits seeking injunctive and declaratory relief." *Id.* at 644.

In the landmark decision *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court recognized an exception to the general rule that a state official, acting in his official capacity, is immune from suit. The *Young* court held that the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law by a state official. *Id.* at 155-56, 159. In *Eldeman v. Jordan*, the Supreme Court interpreted *Young* expansively, holding that a federal court may impose an injunction that governs the official's future conduct but not one that awards retroactive monetary relief. 415 U.S. 651, 664-66 (1974).

This court has already dismissed Price's claims for monetary and declaratory relief against the University and the Board. The critical inquiry now is whether Price has made a sufficient claim for declaratory relief against Witt in his official capacity, such that the claim falls within the *Young* exception to the Eleventh Amendment's immunity protection. This court is of the opinion that Price has not.

*Young* and its progeny provide for prospective injunctive relief for an ongoing violation of federal law.   Retroactive relief is barred by the Eleventh Amendment.   *See Green v. Mansour*, 474 U.S. 64, 69 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102-03 (1985); *Eldeman v. Jordan*, 415 U.S. 651, 668 (1974).   Price's termination and the University Staff Mediation Council's decision to deny his request for a hearing does not constitute a continuing violation of federal law.   These events are of the past and will not occur again in the future.   "Completed acts such as termination through discharge or resignation, a job transfer, or discontinuance of a particular job assignment, are not acts of a continuing nature."   *Malarkey v. Texaco, Inc.*, 559 F. Supp. 117, 121 (S.D.N.Y. 1982).

> [T]he Eleventh Amendment bars suits against state officials in federal court seeking retrospective or compensatory relief, but does not generally prohibit suits seeking only prospective injunctive or declaratory relief. . . . If the prospective relief sought is the functional equivalent of money damages, however, *i.e.*, "[i]t is measured in terms of a monetary loss resulting from a past breach of a legal duty," *Ex parte Young* does not apply.

*Summit Medical Assocs. v. Pryor*, 180 F.3d 1326, 1337 (11th Cir. 1999) (citation omitted).

Page 12 of  31

By requesting a declaratory judgment, Price seeks to have this court circumvent the Eleventh Amendment by holding Witt in his official capacity, and thus the State of Alabama, liable for breach of contract and by ordering him to give Price a post-termination hearing.  As such, Price's claims for declaratory relief against Witt in his official capacity are barred by the Eleventh Amendment and are due to be dismissed.

B.    Price's claims against Witt in his individual capacity.

1.    Price's Section 1983 claims for monetary relief against Witt, individually.

Price alleges that Witt, in his individual capacity, violated his right to due process and equal protection.  "State officials acting in their individual capacities are not protected by the sovereign immunity conferred by the Eleventh Amendment." *Harden v. Adams*, 760 F.2d 1158, 1164 (11th Cir. 1985).

Witt asserts that the claim for monetary relief under 42 U.S.C. § 1983 against him should be dismissed because Price fails to state a property interest in his loss of employment with the University and because of the doctrine of qualified immunity.  "Because qualified immunity is a defense

not only from liability, but also from suit, it is 'important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible.'" *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1370 (11th Cir. 1998)). "The qualified immunity defense may be raised and addressed on a motion to dismiss, and will be granted if the complaint 'fails to allege the violation of a clearly established constitutional right.'" *Smith v. Siegelman*, 322 F.3d 1290, 1294 (11th Cir. 2003) (quoting *Chesser v. Sparks*, 248 F. 3d 1117, 1121 (11th Cir. 2001)).

"To receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). "[A] government official proves that he acted within his discretionary authority by showing 'objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority.'" *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988)).  At all times relevant to this issue,

Page 14 of 31

Witt was acting pursuant to the performance of his duties and within the scope of his authority and as such acted within his discretionary authority.

"Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).  In order to decide if the plaintiff has met this burden, it will be necessary for the court to apply a two-part test.  First the court must determine "whether plaintiff's allegations, if true, establish a constitutional violation." *Smith v. Siegelman*, 322 F.3d 1290, 1295 (11th Cir. 2003). In the event the court finds that the allegations do state a constitutional violation, the court must go on to determine "whether the right was clearly established." *Id.* at 1295.

Plaintiff asserts that he suffered a constitutional violation:

> . . . based upon the denial of three essential and connected requirements for due process.
>
> > 1.  Failure to give notice of any charges or allegations that were to be considered regarding his potential termination.

> 2. Failure to give an opportunity to be heard at a hearing to consider any charges or allegations regarding his potential termination.
>
> 3. Failure to provide and conclude a post-termination review/appeal of his actual termination following the denial of the first two requirements set forth above.

[Plaintiff's Brief in Opposition, pp. 1-2].

However, before reaching the question of the type of procedure which would satisfy due process requirements, this court must decide if Price was due any process at all under the circumstances.  If he had no property interest in his continued employment with the University, Price was not entitled to procedural due process.  As partially quoted in Price's brief, "[h]e must . . . have a legitimate claim of entitlement to [his employment]." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).  If he had no property interest in his employment, Price's claim will fail because there is no showing of a constitutional claim. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) *(*citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576-78 (1972)).

"Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls v. Roth*, 408 U.S. 564, 577 (1972).

Price contends that under state law he had a property interest in his employment at the University because he had an employment contract that was not terminable at will.  (Pl.'s Br. Opp'n Mot. Dismiss at 7).  The first case cited by Price involves an employment situation where the employee sought to have his employment deemed "other than terminable at will" because of certain provisions contained in his employee handbook. *Hoffman-La Roche, Inc. v. Campbell*, 512 So. 2d 725 (Ala. 1987).  The *Hoffman-La Roche* court found that the handbook was a binding unilateral contract because it was considered a specific offer that was accepted by the employee by his "continuing to work." *Id.* at 733.  There was no attempt by Hoffman or his employer to continue negotiating the terms of his contract.  Hoffman accepted the terms as tendered.  Price does not argue,

and has not pled in his complaint that he accepted all the terms of employment offered by the University.  Price and the University announced his employment but, as evidenced by the draft of his employment contract ("Draft Employment Contract") and the summary of terms ("Summary") attached to the complaint, there were several terms included in the Draft Employment Contract that were not included in the Summary that the parties were continuing to negotiate and never agreed upon.  (Compl. Ex. 1 and Ex. 2).  One material term that was not included in the Summary but was included in the Draft Employment Contract was the termination provision requiring Price to pay the University significant liquidated damages in the event he terminated his employment without cause.  There were other terms as well including a provision for substantial liquidated damages if the University terminated Price's employment without cause.  In other words, the parties were each trying to include their respective version of additional terms in the employment agreement noticeably including provisions regarding termination.

It is clear from the complaint and its attachments that Price had not accepted the Draft Employment Contract and he could have left the employ

of the University prior to his termination without paying the liquidated damages.  While a provision for termination may not constitute a material or essential term of some employment contracts, the term is obviously material to an employment contract between a university and its head football coach.  This is especially true in light of the consideration to be paid and the length of employment set forth in the Summary.

Witt contends that both the unsigned Draft Employment Contract and the Summary violate the Alabama Statute of Frauds and as such are void. (Dft.'s  Mem. Supp. Mot. Dismiss at 8).   The Statute of Frauds is an affirmative defense and the defendants would have "the burden of proving that the contract meets the stated criteria of the statute." *Ramsay v. Clarke County Health Care Auth.*, 829 So. 2d 146, 154 (Ala. 2002).  Nevertheless, the issue is certainly relevant to the question of whether there was a violation of a "clearly established" right.  It could also constitute additional grounds for concluding that Price lacked a property interest in his employment if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief.  *See Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). In other words, if taking as true

all well-pleaded factual allegations of the complaint and viewing them in the

light most favorable to the plaintiff, the court finds that the Statute of

Frauds would apply and prevent a property interest from vesting in Price, it

would constitute additional grounds for the finding that due process was not

required and thus support the motion to dismiss.

The Alabama Statute of Frauds in part reads as follows:

> In the following cases, every agreement is void
> unless such agreement or some note or memorandum
> thereof expressing the consideration is in writing and
> subscribed by the party to be charged therewith or
> some other person by him thereunto lawfully
> authorized in writing:
>
> (1) Every agreement which, by its terms, is not to be
> performed within one year from the making thereof;

Ala. Code § 8-9-2 (1975).

The alleged agreement that Price relies upon to create his property

interest is clearly one that by its terms " . . . is not to be performed within

one year from the making thereof." Ala. Code § 8-9-2(1).  In addition,

neither the Summary nor the Draft Employment Contract are signed and the

plaintiff has failed to allege that either of the documents were " . . .

subscribed by the party to be charged therewith or some other person by

him thereunto lawfully authorized in writing . . . ." Ala. Code § 8-9-2(1).

"Failure to comply with the statute of frauds renders such contract

void.  *Spruiell v. Stanford*, 61 So. 2d 758, 763-64 (1952).  A void contract

will not support an action for damages or breach thereof."  *Webster v. Aust*,

628 So. 2d 846, 849 (Ala. Civ. App. 1993) (*citing* Shannon v. Wisdom, 171

Ala. 409, 55 So. 102 (1911)).

Price argues that if the statute of frauds applies, there would still be

one year of employment that would not be voided by the Statute of Frauds

thus providing him a property interest in the remainder of that year.  The

courts of Alabama have considered the argument for dividing an agreement

that would otherwise be within the Statute of Frauds.  The argument is that

the parties did not intend full performance of the entire agreement.  *See*

*Hornady v. Plaza Realty Co., Inc*. 437 So. 2d 591, 593 (Ala. Civ. App. 1983)

(Holding that ". . . an entire contract cannot be within the Statute of Frauds

as a part, and without it as to the remainder.)  The Hornady court held  that

" . . . [w]here the parts of the contract are so interwoven that the parties

cannot reasonably be considered to have contracted with other than full

performance of the entire agreement in mind, the agreement comes within

the Statute of Frauds and is unenforceable." *Id. at* 593. Price has made no

assertion and has not pled any fact that would support a conclusion that he

or the University did not intend to fully perform the alleged agreement. As

early as 1913 the Alabama Supreme Court considered a similar argument

where a turpentine farm owner retained an individual to assist in the

operation of his farm. *Conoley v. Harrell*, 182 Ala. 243, 244, 63 So. 511

(1913). According to the agreement the individual was to assist the farm

owner for a period of fourteen months. The agreement was reduced to

writing, but never signed. After twelve months, the farm owner refused to

allow the individual to continue working under the agreement. The

individual filed suit based on the agreement. The *Conoley* court held that

"[t]he contract was void under the statute of frauds." Id. at 512. The court

went on to explain, that "[t]he contract alleged was an entirety. It was

indivisible. *Martin v. Massie*, 127 Ala. 504. The partial (not complete)

performance of the contract did not take it out of the statute of frauds."

*Conoley* at 512.

Another exception to the prohibition of the enforcement of agreements that falls within the Statute of Frauds is the "executed contract exception."

> A contract is executory if neither party has fully performed his obligation to the other party. *South Carolina Cotton Growers' Co-op. Ass'n v. Weil,* 220 Ala. 568, 126 So. 637 (1929). "[T]he partial performance of a contract, void under the statute of frauds, does not take it from under the influence of the statute, so as to permit a recovery under the contract for any part of the contract remaining executory." *Farrow v. Burns,* 18 Ala. App. 350, 351, 92 So. 236, 237 (1921). A contract is executed, and not voided by the Statute of Frauds, if the plaintiff has fully performed his obligation to the defendant and sues the defendant to obtain the defendant's performance or the completion of the defendant's performance. *Leisure American Resorts, Inc. v. Knutilla,* 547 So. 2d 424 (Ala. 1989).

*Ramsay v. Clarke County Health Care Auth.*, 829 So. 2d 146, 155 (Ala. 2002).

The alleged agreement, if it existed at all, was "executed" as to the time period prior to Price's termination and "executory" as to any remaining term. Partial performance of the agreement "did not take it out of the statute of frauds." *Conoley v. Harrell,* 182 Ala. 243, 244, 63 So. 511, 512 (1913); *See also Ramsay v. Clarke County Health Care Auth.*, 829 So. 2d 146

(Ala. 2002).  The remaining  portion of any agreement that Price may have had with the University is void by effect of the Statute of Frauds.  *See, e.g., Ramsay v. Clarke County Health Care Auth.*, 829 So. 2d 146 (Ala. 2002).  As previously stated, Price cannot support his claim of a property interest through a void agreement.

Plaintiff has argued that Witt admitted, at least in part, the material terms of the alleged agreement.  The rule as espoused by the Alabama Supreme Court is clear that a party can admit to the existence of an agreement and still rely on the statute of frauds as a defense to the agreement.  *Id.* at 154.

Price did not have a property interest in his employment at the University because he had not accepted the terms of the employment contract offered by the University and because his agreement with the University was not reduced to writing and signed as is required by Alabama's Statute of Frauds.   Therefore, Price did not establish there was a Constitutional violation.  *Siegelman*, 322 F.3d at 1295.  Even if Price could prove he had a property interest in his employment entitling him to procedural due process, he cannot show that his property right, and thus his

right to due process, was "clearly established." *Id.*  Thus, Price cannot satisfy the second prong outlined in *Smith v. Siegelman,* leaving Witt entitled to rely on qualified immunity.  *Id.*

Furthermore, if Price could demonstrate that he had a property interest requiring due process that was "clearly established," he would then have to show that the required process itself was "clearly established." Price asserts that all the requirements of due process were clearly established, citing the court to *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985), as well as other cases.  Witt disagrees, contending that the requirements of due process were not clearly established and that even if they were, the necessary procedure was followed.

Witt contends that Price was given sufficient notice and a hearing. Witt further asserts that because of Price's own statements to Witt, Witt had the right to terminate him.  The court, relying on the complaint, is not privy to the statements made by Price, but notes that Price asserts in his complaint that he "openly and honestly informed the Athletic Director and President of the University of Alabama of what had transpired during this trip."  [Doc. # 1, Compl. ¶ 7].

Price argues that at a minimum, a post termination review was required. Not that it is material to this court's opinion, but the exhibits to the complaint demonstrate that Witt joined Price in a request for a post termination review. It is not necessary for the court to ascertain what, if any, process would have been due Price, but only whether that procedure was "clearly established." One clear aspect of this issue is that neither the requirement for the due process nor the type of process required was "clearly established" and so qualified immunity would shield Witt from Price's claims.

As a final effort to avoid the effects of qualified immunity, Price contends that he had a "liberty" interest that was violated by Witt.

> To establish a deprivation of a liberty interest without due process of law, a plaintiff must show: "(1) a false statement (2) of a stigmatizing nature (3) attending a governmental employee's discharge (4) made public (5) by the governmental employer (6) without a meaningful opportunity for [an] employee name clearing hearing."

*Warren v. Crawford*, 927 F. 2d 559, 565 (11th Cir. 1991) (quoting *Buxton v. City of Plant City*, 871 F.2d 1037, 1042-43 (11th Cir. 1989)).

Before a plaintiff can claim that the government defamed him and that such defamation arose to the level of a violation of procedural due process, he must show that the defamation was accompanied by "the violation of some more tangible interest." *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1302 (11th Cir. 2001) *(*citing *Paul v. Davis*, 424 U.S. 693, 701-02 (1976)).  This is known as the "stigma-plus" test.  *Id.* at 1302 (citing *Moore v. Otero*, 557 F. 2d 435, 437 (5th Cir. 1977)).  "Defamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation." *Siegert v. Gilley*, 500 U.S. 226, 233 (1991).  Price claims that he has met the "stigma-plus" test because he was deprived of a property interest in his employment.  The deficiencies in the reliance upon his employment as a property interest have heretofore been discussed.

In addition, a review of the complaint discloses that the statements Price asserts Witt made are simply not of a stigmatizing nature.  Even if the statements were stigmatizing, qualified immunity would protect Witt unless his conduct constituted a violation of a "clearly established right."

"Qualified immunity protects government officials sued in their individual capacities as long as their conduct does not violate 'clearly

established statutory or constitutional rights of which a reasonable person would have known.'" *Smith v. Siegelman*, 322 F. 3d 1290, 1294 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730 (2002)).  "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, . . . protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (citation omitted).  It can hardly be said that Witt was "plainly incompetent," that he "knowingly violat[ed] the federal law" or that a reasonable person would have known better.  Witt is entitled to rely on qualified immunity.

> 2.    Price's petition for declaratory relief against Witt, individually.

At oral argument, counsel for Price made the following statement, "With regard to the declaratory relief, we would ask that Robert E. Witt, in his official capacity, be ordered to do that and in his official capacity to have the hearing, because there's no one else we can go to."  (Hr'g Tr. at 51).  Prior to the hearing, Price had included a claim against Witt in his

individual capacity in his request for declaratory relief. This court agrees with Price's counsel's statement at the hearing, because if Witt is properly the subject of such relief at all it would only be in his official capacity. Consequently, this court declines to entertain Price's petition for declaratory relief against Witt in his individual capacity.

It is well settled that the trial court has sound discretion in granting a declaratory judgment. *See Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995); *Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962)("The Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so.")

Because a declaration that the contract made the basis of this suit was breached and that Price is entitled to compensation and a post-termination hearing, even in the context of a claim for declaratory relief against Witt in his individual capacity is tantamount to this court compelling the Board to act, which is barred by the Eleventh Amendment, this court declines to exercise jurisdiction over Price's petition for declaratory relief against Witt in his individual capacity.

3.    Price's state law claims against Witt, individually.

Witt seeks dismissal of Price's state law claims, in Count III, for wrongful termination and in Count IV, for fraud, misrepresentation, and deceit as well as the repetitive allegations in the amended complaint. This court would not dismiss these claims at this stage on a substantive ground. Price, through his counsel at the hearing on the motion to dismiss, argued that this court should dismiss the state law claims without prejudice if this court decided it was required to dismiss the federal claims. (Hr'g. Tr. at 70). Witt offered no opposition. This court, not having ruled on the merits of the state law claims, will dismiss the repetitive allegations of the amended complaint as well as Count III and Count IV without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

V.    CONCLUSION.

In sum, this court is of the opinion that Count I of the Complaint and the Amended Complaint are due to be dismissed. Defendants' motion to dismiss Count III and IV is due to be granted without prejudice. The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this 25 of October, 2003.

L. Scott Coogler
United States District Judge

Done, this 25 of  October, 2003.

L. Scott Coogler
United States District Judge